UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE HOOSICK FALLS PFOA CASES. | This Memorandum-Decision and Order pertains to: <br><br> Reece, No. 1:19-CV-219; Bamrick, No. 1:19-CV-225; Driscoll, No. 1:19-CV-231; Gates, No. 1:19-CV-221; Slowey, No. 1:19-CV-216; Webber, No. 1:19-CV-220; Wyman, No. 1:19-CV-215. |

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

This action concerns allegations of tortious acts committed by: (1) operators of facilities that discharged or released perfluorooctanoic acid ("PFOA") into the Village of Hoosick Falls's ("Hoosick Falls" or the "Village") water supply; and (2) several suppliers of those PFOAs. The plaintiffs—Kathleen Reece, Diane Bamrick, Mark Driscoll, Crystal Gates, Ryan Slowey, Ian Webber, and Lori Wyman (collectively, "Individual Plaintiffs")—assert claims in their individual capacities (and several on behalf of an estate) against these facility operators and PFOA suppliers under New York State law for negligence, gross negligence, strict liability, and strict products liability. Some of the Individual Plaintiffs also assert claims for loss of consortium and wrongful death.[1]

---

[1] For simplicity, when the Court cites a complaint below it cites to portions of the Reece Complaint (No. 1:19-CV-219, Dkt. No. 1) (hereinafter, "Complaint"). The other six complaints raise similar allegations and the portions of the Complaint cited in this Memorandum-Decision and Order are identical among all the complaints. See No. 1:19-CV-219, Dkt. No. 1; No. 1:19-CV-225, Dkt. No. 1; No. 1:19-CV-231, Dkt. No. 1; No. 1:19-CV-221, Dkt. No. 1; No. 1:19-CV-216, Dkt. No. 1; No. 1:19-CV-220, Dkt. No. 1; No. 1:19-CV-215, Dkt. No. 1.

Individual Plaintiffs each bring claims against Saint-Gobain Corporation ("Saint-Gobain") and its subsidiary, Saint-Gobain Performance Plastics Corporation ("SGPP"). Compl. Saint-Gobain moves to dismiss the Individual Plaintiffs' cases pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[2] Individual Plaintiffs oppose the Motions to Dismiss,[3] and Saint-Gobain has filed replies.[4]

For the following reasons, the Court denies all of the Motions to Dismiss and grants Individual Plaintiffs' requests to conduct jurisdictional discovery.

## II. FACTUAL BACKGROUND

The relevant allegations and assertions of fact appear to be as follows:

### A. Overview of Saint-Gobain and SGPP

Saint-Gobain is incorporated and has its principal place of business in Pennsylvania. Compl. ¶ 20. SGPP, of which Saint-Gobain is the "parent" company, is incorporated in California and has its principal place of business in Pennsylvania. Id. ¶¶ 2, 18. "SGPP is a wholly

---

[2] Saint-Gobain has filed identical Motions to Dismiss in each of the above-captioned cases. See No. 1:19-CV-219, Dkt. No. 28; No. 1:19-CV-225, Dkt. No. 30; No. 1:19-CV-231, Dkt. No. 28; No. 1:19-CV-221, Dkt. No. 28; No. 1:19-CV-216, Dkt. No. 28; No. 1:19-CV-220, Dkt. No. 30; No. 1:19-CV-215, Dkt. No. 30 (collectively, "Motions to Dismiss").

[3] Individual Plaintiffs have filed identical Responses in each of the above-captioned cases. See No. 1:19-CV-219, Dkt. Nos. 35; 44; No. 1:19-CV-225, Dkt. Nos. 37; 46; No. 1:19-CV-231, Dkt. Nos. 35; 44; No. 1:19-CV-221, Dkt. Nos. 35; 44; No. 1:19-CV-216, Dkt. Nos. 35; 44; No. 1:19-CV-220, Dkt. Nos. 37; 46; No. 1:19-CV-215, Dkt. Nos. 37; 46 (collectively, "Responses"). There are multiple copies of the Responses on the dockets because the Court directed Individual Plaintiffs to file certain portions of their opposition papers under seal.

[4] Saint-Gobain has filed identical Replies in each of the above-captioned cases. See No. 1:19-CV-219, Dkt. No. 42; No. 1:19-CV-225, Dkt. No. 44; No. 1:19-CV-231, Dkt. No. 42; No. 1:19-CV-221, Dkt. No. 42; No. 1:19-CV-216, Dkt. No. 42; No. 1:19-CV-220, Dkt. No. 44; No. 1:19-CV-215, Dkt. No. 44 (collectively, "Replies").

owned subsidiary of Saint-Gobain Ceramics & Plastics, Inc., which is a subsidiary of Saint-Gobain Delaware Corporation, which is a subsidiary of Defendant Saint-Gobain." Id. ¶ 19. And SGPP "is present in 16 countries in North American, Europe and Asia, and operates 45 manufacturing sites." Id. ¶ 21.

**B. Overlap Between Saint-Gobain and SGPP**

Saint-Gobain "was actively involved in the management of, and decision-making by, SGPP, including issues relating to environmental health and safety" and the "disposal of hazardous or toxic substances and wastes by SGPP." Id. ¶¶ 2, 3. Furthermore, Saint-Gobain has provided SGPP with "[v]arious types of services, for example, tax, treasury, risk management, human resources, [and] environmental health and safety" over a seventeen-year period. Resps., Ex. S at 81–82. "SGPP remains the owner and operator of the Hoosick Facilities, with significant input from Saint-Gobain regarding operations." Compl. ¶ 80.

From January 2017 to January 2019, Thomas Kinisky was the CEO of both Saint-Gobain and SGPP. Resps., Exs. J; O; H. As CEO of both companies, Kinisky interacted with the Mayor of Hoosick Falls regarding the PFOA contamination of the Village's drinking supply. Id., Exs. M; Q. And "[i]n response to a [New York State Department of Environmental Conservation] questionnaire in 2016, SGPP admitted to disposal of PFOA containing wastes at the Hoosick Facilities in documents attested to or confirmed by Edward Canning, an employee of SGPP and/or Saint-Gobain." Compl. ¶ 93.

Another SGPP employee, Phil Guy, previously testified that Saint-Gobain and SGPP employees were "all part of the – ultimately part of the French corporation overall." Resps., Ex. R at 10.

### C. Other Facts Purportedly Supporting Jurisdiction Over Saint-Gobain

Individual Plaintiffs also allege Saint-Gobain is "a past owner and operator of the Hoosick Facilities." Compl. ¶ 5. As an owner of the Hoosick Facilities, "Saint-Gobain knew, or should have known, that PFOA-containing materials had been used in the Hoosick Facilities and thereby posed a risk to those exposed to PFOA contamination originating from the Hoosick Facilities during the time of [its] ownership." Id. ¶ 110.

Additionally, at least one manufacturer of PFOA-containing materials, E. I. DuPont De Nemours and Company, sold such materials "to Saint-Gobain . . . that were used at the [Village of] Hoosick [Falls] facilities," which in turn "discharged, released or otherwise disposed of" PFOA into the Village's drinking supply. Id. ¶¶ 8, 30.

Finally, "on December 30, 2014, SGPP filed a Toxic Substances Control Act ('TSCA') Section 8(e) Notice with EPA. In that Notice, SGPP and Saint-Gobain reported the presence of PFOA in the Village water supply and the nexus of that contamination to the Hoosick Facilities." Id. ¶ 116. The Notice listed Lauren Alterman—Saint-Gobain's Vice President of Environmental, Health and Safety—as the point of contact. Resps., Exs. K; L.

### III. LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendants." Micro Fines Recycling Owego, LLC v. Ferrex Eng'g, Ltd., No. 17-CV-1315, 2019 WL 1762889, at *2 (N.D.N.Y. Apr. 22, 2019) (Kahn, J.) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)). The court is not limited to considering "the four corners of the complaint." Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201,

225 (S.D.N.Y. 2013). "[T]he Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion." Id.

A plaintiff need only make a prima facie showing of personal jurisdiction over a defendant. Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005). "A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quoting Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564–65 (S.D.N.Y. 1997)). Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998). While "the pleadings and affidavits are to be construed in the light most favorable to Plaintiff, and all doubts are to be resolved in Plaintiff's favor," Minholz v. Lockheed Martin Corp., 227 F. Supp. 3d 249, 255 (N.D.N.Y. 2016), a court should "not draw 'argumentative inferences' in the plaintiff's favor," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

## IV. DISCUSSION

When making a prima facie showing of jurisdiction, "a plaintiff must demonstrate a statutory basis for personal jurisdiction over the defendant, and that the Court's exercise of jurisdiction over the defendant is in accordance with constitutional due process principles." Minholz v. Lockheed Martin Corp., 227 F. Supp. 3d 249, 256 (N.D.N.Y. 2016) (citing Stroud v. Tyson Foods, Inc., 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015); Licci ex rel. Licci v. Lebanese

Canadian Bank, SAL, 673 F.3d 50, 59–60 (2d Cir. 2012)). Although Individual Plaintiffs fail to clarify, the Court construes their complaints as alleging personal jurisdiction over Saint-Gobain pursuant to New York State's general jurisdiction statute, New York Civil Practice Law and Rules § 301 ("CPLR § 301"), and New York State's specific jurisdiction statute, New York Civil Practice Law and Rules § 302(a) ("CPLR § 302"). Saint-Gobain does not contest that Individual Plaintiffs have sufficiently alleged jurisdiction under CPLR §§ 301–02. Mot. to Dismiss at 4 n.3 ("Although a plaintiff must also show that personal jurisdiction is authorized under a state long-arm statute, Saint-Gobain focuses here on the outer constitutional limits of personal jurisdiction . . . .") (internal citation omitted). Thus, the Court's inquiry will focus on whether the Court may assert jurisdiction over Saint-Gobain in accordance with due process.

"The canonical opinion in [the area of due process and personal jurisdiction] remains International Shoe Co. v. Washington, 326 U.S. 310 [1945], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe, 326 U.S. at 316). According to the Supreme Court:

> International Shoe recognized . . . that the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity. Adjudicatory authority of this order, in which the suit arises out of or relates to the defendant's contacts with the forum is today called specific jurisdiction.

> International Shoe distinguished between, on the one hand, exercises of specific jurisdiction, as just described, and on the other, situations where a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. As we have since explained, a court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State.

Daimler AG v. Bauman, 571 U.S. 117, 126–27 (2014) (internal citations, quotation marks, and alterations omitted). Saint-Gobain argues it is not subject to general or specific jurisdiction in this Court. Mots. to Dismiss at 5–8; Replies at 2–4.

**A. General Jurisdiction**

As noted above, "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" Daimler, 571 U.S. at 122 (quoting Goodyear, 564 U.S. at 919). "Aside from 'an exceptional case,' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (quoting Daimler, 571 U.S. at 139). The Daimler court only provided one example of such an "exceptional case" in which general jurisdiction may be found beyond a corporation's place of incorporation or principal place of business: Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952). Daimler, 571 U.S. at 128–31. "In Perkins, the defendant company's principal place of business was, because of wartime circumstances, temporarily located in the state where it was sued, which

7

the Daimler Court deemed a surrogate for the place of incorporation or head office. The Court noted that its decision in Perkins remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." Minholz, 227 F. Supp. 3d at 259 (internal citations and quotation marks omitted). Hence, the Supreme Court has made clear "that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is . . . insufficient to render it at home in a forum." Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 226 (2d Cir. 2014) (quoting Daimler, 571 U.S. at 138), cert. denied, 573 U.S. 948 (2014).

Saint-Gobain argues that Individual Plaintiffs have not sufficiently alleged that it is subject to general jurisdiction since Saint-Gobain is not "at home" in New York State. Mots. to Dismiss at 5. The Court agrees. Saint-Gobain is incorporated and has its principal place of business in Pennsylvania, Compl. ¶ 20, and therefore does not possess contacts with New York State that "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" Daimler, 571 U.S. at 122 (quoting Goodyear, 564 U.S. at 919). Nor have Individual Plaintiffs alleged any facts that suggest this is an "exceptional case" in which general jurisdiction may be found beyond Saint-Gobain's place of incorporation or principal place of business. See Daimler, 571 U.S. at 128–31.

Consequently, the Court cannot assert general jurisdiction over Saint-Gobain.

**B. Specific Jurisdiction**

As another court in this district has observed:

> For specific jurisdiction, a corporation's continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity. The

8

> plaintiff must demonstrate that her claim arises out of or relates to defendant's contacts with the forum state and that the defendant purposefully availed itself of the privilege of doing business in the forum state such that it could foresee being haled into court there. Thus, specific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction.

Minholz, 227 F. Supp. 3d at 259–60 (N.D.N.Y. 2016) (internal citations, quotation marks, and alterations omitted).

Individual Plaintiffs assert facts purporting to show Saint-Gobain's interactions with SGPP establishes jurisdiction over the former. For instance, Individual Plaintiffs allege that Saint-Gobain "was actively involved in the management of, and decision-making by, SGPP, including issues relating to environmental health and safety" and the "disposal of hazardous or toxic substances and wastes by SGPP." Id. ¶¶ 2–3. They further aver that Saint-Gobain has provided SGPP with "[v]arious types of services, for example, tax, treasury, risk management, human resources, environmental health and safety" over a seventeen-year period. Resps., Ex. S at 81–82. Finally, Individual Plaintiffs claim that "SGPP remains the owner and operator of the Hoosick Facilities, with significant input from Saint-Gobain regarding operations." Compl. ¶ 80. Yet Individual Plaintiffs have not shown Saint-Gobain has purposefully availed itself of the New York forum through its interactions with SGPP, as there are no allegations that Saint-Gobain managed SGPP or provided services or input to SGPP within New York State. And even if Individual Plaintiffs had done so, they have not sufficiently shown that these facts bear any relation to the Hoosick Facilities alleged discharge or release of PFOA into the Village's drinking supply. See Adams v. Horton, No. 13-CV-10, 2015 WL 1015339, at *6 (D. Vt. Mar. 6, 2015) (finding that a defendant's phone call with the plaintiff occurring in the forum state did not give

9

rise to the plaintiff's claims under the Americans with Disabilities Act, Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment). Consequently, the Court cannot conclude Individual Plaintiffs' claims arise from these purported contacts.

Individual Plaintiffs also attempt to establish jurisdiction through Saint-Gobain's direct contacts with New York State. For instance, while Individual Plaintiffs allege Saint-Gobain was "a past owner and operator of the Hoosick Facilities," id. ¶ 5, they do not allege the dates of such ownership or operation. Accordingly, this allegation is insufficient to support a finding of jurisdiction because it is unclear whether Individual Plaintiffs' claims even arise out of this purported period of ownership and operation. And while Individual Plaintiffs allege that "DuPont manufactured and/or sold PFOA to Saint-Gobain" that was "used at the Hoosick Facilities," id. ¶ 30, they do not allege facts suggesting such sale occurred in New York State, that Saint-Gobain then transported the PFOA into the State, or that Saint-Gobain is responsible for the utilization of DuPont's PFOA at the Hoosick Facilities or its discharge or release into the Village's water supply. See Nespresso USA, Inc. v. Ethical Coffee Co. SA, 263 F. Supp. 3d 498, 504 (D. Del. 2017) (finding parent companies not subject to specific jurisdiction when the counterclaim-plaintiff had not demonstrated that those companies, rather than their subsidiary, introduced the infringing product into the forum state).

Finally, Individual Plaintiffs' reliance on the facts that (1) a Saint-Gobain employee was listed on an EPA notice reporting "the presence of PFOA in the Village water supply and the nexus of that contamination of the Hoosick Facilities," Compl. ¶ 116; (2) Thomas Kinisky, formerly the CEO of both Saint-Gobain and SGPP, interacted with the Mayor of Hoosick Falls regarding the PFOA contamination of the Village's drinking supply, Resps., Exs. J; O; H; M; Q;

10

and (3) an employee potentially of both Saint-Gobain and SGPP confirmed the "disposal of PFOA containing wastes at the Hoosick Facilities," Compl. ¶ 93, do not sufficiently establish specific jurisdiction over Saint-Gobain. While these facts suggest Saint-Gobain may have acted within the forum after PFOA had contaminated the Village's water supply, they do sufficiently suggest Saint-Gobain is responsible for the use of PFOA at the Hoosick Facilities or the discharge or release of PFOA into the Village's water supply. Moreover, "the existence of overlapping corporate officers [in itself] does not necessarily establish" a parent company's contacts with the forum state. Am. Med. Sys., Inc. v. Biolitec, Inc., 604 F. Supp. 2d 325, 329 (D. Mass. 2009) (citing United States v. Bestfoods, 524 U.S. 51, 68–69 (1998)).

In sum, the Court cannot assert specific jurisdiction over Saint-Gobain.

**C. Alter Ego Theory**

Individual Plaintiffs also argue the Court should assert jurisdiction over Saint-Gobain under the theory that SGPP is an alter ego of its parent. Resps. at 13–15. Saint-Gobain concedes that SGPP "owns and operates two manufacturing facilities in the Village of Hoosick Falls, New York." Mots. to Dismiss at 3.

"The alter ego theory allows plaintiffs to pierce the corporate veil to impute a subsidiary's contacts to the parent company by showing that the subsidiary and the parent are one and the same . . . . The rationale behind this theory is that the alter ego subsidiary is the same entity as its parent, and thus, the jurisdictional contacts of the subsidiary are also jurisdictional contacts of the parent." Delacruz v. Serv. Corp. Int'l, No. 18-CV-154, 2018 WL 2287962, at *4 (E.D. Cal. May 18, 2018) (internal quotation marks omitted) (quoting Viega GmbH v. Eighth Jud. Dist. Ct., 328 P.3d 1152, 1157 (Nev. 2014)).

11

"Because this is a diversity action, we apply the substantive law of the state in which this action was brought, viz., New York, including New York's . . . choice of law rules." Quinn v. Teti, 234 F.3d 1262, 1262 (2d Cir. 2000). "Under New York choice-of-law rules, the law of the state of incorporation is used to determine whether the corporate veil should be pierced." Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 227–28 (S.D.N.Y. 2013) (citing, inter alia, Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)); see also Ligotti v. Provident Life & Cas. Ins. Co., 857 F. Supp. 2d 307, 314–15 (W.D.N.Y. 2011) (applying the law of the subsidiary's place of incorporation to determine whether to pierce the subsidiary's corporate veil). Since SGPP is a California corporation, Compl. ¶ 18, the Court must turn to California law to determine whether SGPP is an alter ego of Saint-Gobain.

"To satisfy the alter ego test [to establish personal jurisdiction], a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks omitted) (quoting Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)). As noted by a Northern District of California court:

> The first prong of the alter ego test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former. It requires such pervasive control that it can only be met where a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation. Importantly, the Ninth Circuit has emphasized that total ownership and shared management personnel are alone insufficient to establish the requisite level of control. Nor can the first prong be met by only showing an active parent corporation involved directly in decision-making about its subsidiaries' holdings where the corporations observe all of the

> corporate formalities necessary to maintain corporate separateness. Courts consider nine factors when assessing the first prong of the alter ego test:
>
> [1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers.

Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (internal citations, quotation marks, and alterations omitted).

In Corcoran, the court concluded that the plaintiffs "had not made a *prima facie* showing" of a "unity of interest and ownership" even though the plaintiffs provided evidence supporting the third, fourth, and ninth factors: "the evidence shows only that CVS Health wholly owns CVS Pharmacy, the two entities have overlapping officers and directors, CVS Health presents itself as one integrated company on its website and in government filings for marketing purposes, and CVS Health has been involved in discrete business decisions of CVS Pharmacy." Corcoran, 169 F. Supp. 3d at 983–84.

Here, Individual Plaintiffs provide similar evidence satisfying the same factors of the "unity of interest and ownership" prong. For instance, they allege "SGPP is a wholly owned subsidiary of Saint-Gobain Ceramics & Plastics, Inc., which is a subsidiary of Saint-Gobain Delaware Corporation, which is a subsidiary of Defendant Saint-Gobain." Compl. ¶ 19. Individual Plaintiffs further suggest that Saint-Gobain and SGPP may share certain employees, including Thomas Kinsky, Resps., Exs. J; O; H, and Edward Canning, Compl. ¶ 93. Additionally, an SGPP employee, Phill Guy, previously testified that Saint-Gobain and SGPP

13

employees were "all part of the – ultimately part of the French corporation overall." Resps., Exs. R at 10. And Saint-Gobain has managed SGPP and provided input to SGPP. Compl. ¶¶ 2, 3, 80. As in Corcoran, "the Court concludes that this evidence is legally insufficient to satisfy the unity of interest prong of the alter ego test." Corcoran, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) (citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) (concluding that facts showing that parent wholly owned subsidiary, parent and subsidiary employed the same staff, shared the same officers and directors, and shared physical office space did not satisfy first prong of alter ego test); Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) (finding that facts supporting the third, fourth, and ninth "unity of interest and ownership" factors "even when considered together, are not sufficient to support a finding of unity of interest among" corporate entities)). Like in Corcoran, Individual Plaintiffs' "failure to address the other six ['unity of interest and ownership'] factors strongly weighs against a finding that" SGPP's "contacts should be imputed" to Saint-Gobain. 169 F. Supp. 3d at 984 (citing Stewart, 81 F. Supp. 3d at 955).

Individual Plaintiffs' reliance on an additional fact to support a finding of "unity of interest and ownership"—that Saint-Gobain has provided SGPP with "[v]arious types of services, for example, tax, treasury, risk management, human resources, environmental health and safety" over a seventeen-year period—is unavailing. For, this fact does not show Saint-Gobain "controls" SGPP "to such a degree as to render the latter the mere instrumentality of the former." Ranza, 793 F.3d at 1073 (internal quotation marks omitted) (quoting AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996)); see also Calvert v. Huckins, 875 F. Supp. 674, 679 (E.D. Cal. 1995) ("[P]laintiffs point out that counsel for Centex has

14

provided legal services to both CXP and Western. [W]hile this point carries plaintiffs' argument the furthest, it nevertheless does not suffice to establish the measure of control necessary to justify disregarding the corporate entity.")

In sum, the Court cannot assert personal jurisdiction over Saint-Gobain through an alter-ego theory.[5]

### D. Jurisdictional Discovery

"[E]ven where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." Leon v. Shmukler, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003)). Jurisdictional discovery is warranted when "the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction[,] facts that would support a colorable claim of jurisdiction." Id. at 195 (quoting Ayyash v. Bank Al–Madina, No. 04-CV-9201, 2006 WL 587342, at *5 (S.D.N.Y. March 9, 2006)).

Individual Plaintiffs request jurisdictional discovery in case the Court finds they have not met their burden in establishing jurisdiction over Saint-Gobain. Resps. at 15–17. As discussed above, Individual Plaintiffs have not made a prima facie showing that Saint-Gobain is subject to the personal jurisdiction of this Court. The Court, however, finds that Individual Plaintiffs "have made a sufficient start toward establishing jurisdiction." See PST Servs., Inc. v. Larson, 221 F.R.D. 33, 37 (N.D.N.Y. 2004). For instance, Individual Plaintiffs established Thomas Kinsky

---

[5] "Having found that Plaintiffs failed to establish the first prong, the Court need not address the second prong of the alter ego test." Corcoran, 169 F. Supp. 3d at 984.

was simultaneously the CEO of Saint-Gobain and SGPP, Resps., Exs. J; O; H, and that Edward Canning may be an employee of both companies, Compl. ¶ 93. Another court in this district has granted jurisdictional discovery solely on the fact that a parent company and its subsidiary shared the same president. See Perkins v. Sunbelt Rentals, Inc., No. 14-CV-1378, 2015 WL 12748009, at *12 (N.D.N.Y. Aug. 13, 2015). Individual Plaintiffs have adduced additional facts suggesting a need for jurisdiction discovery, such as that Saint-Gobain managed SGPP or provided services or input to SGPP. Compl. ¶¶ 2, 3, 80; Resps., Ex. S at 81–82. See WM Int'l, Inc. v. 99 Ranch Mkt. #601, 329 F.R.D. 491, 495–96 (E.D.N.Y. 2019) (ordering jurisdictional discovery because a subsidiary's New York State contacts along with "allegations of a corporate relationship" between the subsidiary and its controlling corporate entity "make it possible that [this entity] is subject to personal jurisdiction in New York").

Other facts suggest Saint-Gobain may be subject to personal jurisdiction. Saint-Gobain was "a past owner and operator of the Hoosick Facilities," id. ¶ 5, and "DuPont manufactured and/or sold PFOA to Saint-Gobain . . . used at the Hoosick Facilities," id. ¶ 30. While these facts are insufficient to establish a prima facie case for jurisdiction, they satisfy the light burden Individual Plaintiffs must meet to justify jurisdictional discovery. See Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000) (ordering jurisdictional discovery based on the plaintiff's "conclusory" allegations).

The Court's finding that jurisdictional discovery is warranted in this instance is buttressed by the realization that "the facts necessary to establish personal jurisdiction" may "lie exclusively within the defendant's knowledge." Winston & Strawn v. Dong Won Sec. Co., No. 02-CV-183, 2002 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002) (citing Wells Fargo & Co. v. Wells Fargo

16

Express Co., 556 F.2d 406, 430 n.4 (2d Cir. 1977); Gelfand v. Tanner Motors, Ltd., 339 F.2d 317, 323 (2d Cir. 1964)).

V.   **CONCLUSION**

The Court denies Saint-Gobain's motions to dismiss and will permit Individual Plaintiffs to take jurisdictional discovery. "Such discovery should be directed to ascertaining the precise level of interrelatedness between" Saint-Gobain and SGPP. See Aerotel, 100 F. Supp. 2d at 194. It should also be directed at discerning the direct contacts, if any, between Saint-Gobain and New York State.

Accordingly, it is hereby:

**ORDERED**, that Saint-Gobain's Motions to Dismiss[6] are **DENIED**; and it is further

**ORDERED**, that Individual Plaintiffs' requests to take jurisdictional discovery are **GRANTED**. Individual Plaintiffs may take jurisdictional discovery to establish whether Saint-Gobain is subject to personal jurisdiction in this Court, including but not limited to whether Saint-Gobain is an alter ego of SGPP; and it is further

**ORDERED**, that the above-captioned cases are referred to the Honorable Daniel J. Stewart, United States Magistrate Judge, so that he may oversee the jurisdictional discovery ordered by the Court; and it is further

---

[6] No. 1:19-CV-219, Dkt. No. 28; No. 1:19-CV-225, Dkt. No. 30; No. 1:19-CV-231, Dkt. No. 28; No. 1:19-CV-221, Dkt. No. 28; No. 1:19-CV-216, Dkt. No. 28; No. 1:19-CV-220, Dkt. No. 30; No. 1:19-CV-215, Dkt. No. 30.

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: January 02, 2020
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge